**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Carol Graham, <br><br>  Plaintiff, <br><br> v. <br><br> JoAnne B. Barnhart, Commissioner of Social Security, <br><br>  Defendant. | No. CIV 04-244-TUC-RCC (JM) <br><br> **REPORT AND RECOMMENDATION** |

Plaintiff Carol Graham brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security.  This Social Security Appeal has been referred to the United States Magistrate Judge pursuant to Local Rule – Civil 72.2(a)(10) of the Rules of Practice of this Court. Based on the pleadings of the parties and the record submitted to the Court, the Magistrate Judge recommends that the District Court, after its independent review, grant Plaintiff's Motion for Summary Judgment [Doc. No. 8] and deny Defendant's Cross-Motion for Summary Judgment [Doc. No. 9].

**I. Procedural Background**

On March 12, 2002, Plaintiff concurrently filed an Application for Disability Insurance Benefits under Title II and an Application for Supplemental Security Income Benefits under Title XVII, with at protective filing date of July 12, 2001. (Tr. 75-77, 131, 253-255). Her claims were denied initially (Tr. 36, 64-68 (Disability Insurance Benefits) & 37, 248-252 (SSI Benefits)), and upon reconsideration  (Tr. 34, 58-61 & 35, 240-243). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 68). The hearing was held on April 16, 2003, and her claims were denied in a decision by the ALJ

1    dated May 22, 2003. (Tr. 18-23). She subsequently requested review of the hearing decision
2    by the Appeals Council. (Tr. 10-11). On February 6, 2004, Plaintiff submitted legal
3    argument and additional evidence for consideration by the Appeals Council. (Tr. 256-271).
4    On March 5, 2004, the Appeals Council denied Plaintiff's request for review. (Tr. 3-5).
5    Accordingly, the ALJ's decision became the final decision of the Commissioner of Social
6    Security. (Tr. 3). Plaintiff subsequently filed a complaint in this Court on May 7, 2004,
7    seeking judicial review of the ALJ's decision.

8    **II. Record on Appeal**

9        **A. Plaintiff's Testimony**

10       At the hearing before the ALJ, Plaintiff represented herself and was questioned by the
11   ALJ. Plaintiff testified that she was born on December 22, 1955, is approximately 5'4" tall,
12   and weighs 130 pounds. (Tr. 276). She lives in an apartment with her 13 year-old daughter.
13   (Tr. 277-278). She has a high school diploma, two years of college, and five years of trade
14   school, with training in plumbing, heating and air conditioning. (Tr. 277).

15       Plaintiff previously worked as an apprentice plumber, but did not continue in that
16   work due to stress related to the job, including problems with job foremen. (Tr. 280-282).
17   She explained that she did not seek other employment in the plumbing field after being
18   treated unfairly by the apprenticeship coordinator employed by the union who would not give
19   her job assignments to which she was entitled. (Tr. 281).

20       Plaintiff also previously worked doing telephone surveys. (Tr. 282). She left that line
21   of work due to "personal differences" with the owner, who was taking advantage of
22   employees by forcing them to work unpaid overtime. (Tr. 282). She worked briefly as a
23   bank teller, but was terminated for miscounting money and accumulating "more mishaps of
24   the small things." (Tr. 283). Plaintiff also worked in childcare, but could not handle being
25   taken advantage of by her co-workers. (Tr. 285). She also tried to work alone at a job
26   cleaning Tucson Medical Center, but found that "technically, you actually don't really work
27   alone." (Tr. 286). Plaintiff last worked part-time in October 2002 as a laborer and full-time

28

1 from September 2001 through January 2002 as a cab driver. (Tr. 279-280). She explained
2 that she would have a difficult time physically performing most jobs because she suffers from
3 osteopenia, "a continuous back cramp," and arthritis. (Tr. 286-87). She also suffers from
4 depression and experiences auditory hallucinations. (Tr. 290-91).

When asked why she feels she cannot now work, Plaintiff stated that she suffers from depression, Post-Traumatic Stress Disorder, anxiety, panic and does not have the energy to maintain a regular schedule. (Tr. 283). She explained that in work situations she would "become extremely depressed and [would] withdraw quite a lot." (Tr. 284). She feels that she cannot succeed at anything other than being a mother. (Tr. 284).

On a typical day, Plaintiff gets out of bed at about 6:30 a.m. and has coffee while her thirteen year-old daughter gets ready for school. (Tr. 288). After breakfast, she either reads, watches television, solves puzzles, or does paperwork. (Tr. 288). Then she will go to any appointments she has, mow and rake the grass, or do housecleaning. (Tr. 288). She also does laundry and, if necessary, shops for groceries. (Tr. 288-89). Sometimes, she visits a neighbor and once per week visits her 20 year-old daughter who lives in her own apartment. (Tr. 289). She also makes and cleans-up after dinner. (Tr. 289).

### B. Vocational Expert

Vocational Expert Ruth Van Vleet testified during the hearing before the ALJ and was asked to provide an opinion about Plaintiff's ability to perform her past relevant work based on the following hypothetical:

> I'd like you to assume an individual of the claimant's age, education, and work experience. And assume that a hypothetical individual has no physical impairments, but has mental limitations as follows: The person is moderately limited in the ability to maintain attention and concentration for extended periods. The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. And moderately limited in the ability to complete a normal workday and work week without interruptions from psychologically-based symptoms. And to perform at a consistent pace without an unreasonable number and length of rest periods. There are no areas that are considered to be where the hypothetical individual is markedly

> limited. And the individual is not significantly limited in quite a number of areas: The ability to remember locations and work-like procedures, the ability to understand that remember very short and simple instructions, the ability to understand and remember detailed instructions, the ability to carry out very short and simple instructions, the ability to carry out detailed instruction, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or proximity to others without being distracted by them, the ability to make simple work-related decisions.

(Tr. 292-933). Based on this hypothetical, the expert opined that the described individual was capable of performing the past relevant work performed by the Plaintiff. (Tr. 293). Specifically, she believed that Plaintiff

> could've probably continued with those limitations to work doing the sort of apartment maintenance. I think she also did some repair work. The childcare job, the telephone survey job. I think she also said that at a time she also did cleaning. And since "moderate" in my understanding is only on an average, [an] individual with those sort of limitations [could] work in all those different types of areas.

(Tr. 293-94).

### C. ALJ's Findings and Decision

After the hearing and after considering the entire record, the ALJ found that the medical evidence established that the Plaintiff has these severe, medically determinable impairments: depression and post traumatic stress disorder. (Tr. 23). However, he concluded that these impairments were not medically equal to any listed in 20 C.F.R. § 404, Appendix 1, Subpart P. (Tr. 23). Based on the medical evidence the ALJ then found that Plaintiff

> retains the functional capacity to perform work activity regardless of the exertional level. Her mental conditions cause moderate limitation in the ability to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but no other significant limitations (20 C.F.R. 404.1545 and 416.945).

(Tr. 23). The ALJ then found that Plaintiff's impairments do not preclude performance of her past relevant work as apartment maintenance person, child care worker, telephone survey

- 4 -

taker, and janitor/cleaner, and that she "was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(e) and 416.920(e))." (Tr. 23).

Based on these findings, the ALJ reached the following decision:

> It is the decision of the Administrative Law Judge that, based on the applications filed effective on July 12, 2001, the claimant is not entitled to a period of disability or disability insurance benefits under Sections 216(i) and 223, respectively, of the Social Security Act, and is not eligible for supplemental security income under sections 1602 and 1614(a)(3)(A) of the Act.

(Tr 22-23).

## III. Standard of Review

A district court's review of a disability determination is limited, and a final administrative decision can be revised "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation and internal quotations omitted). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morgan v. Commissioner of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). It consists of "more than a mere scintilla but less than a preponderance." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999); *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990).

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Aukland v. Massanari*, 257 F.2d 1033, 1035 (9th Cir. 2001). However, the ALJ's decision must be upheld if the evidence is reasonably susceptible to more than one rational interpretation, *Allen v. Secretary of Health and Human Services* 726 F.2d 1470, 1473 (9th Cir. 1984), and the Court cannot substitute its judgment for that of the Commissioner. *Reddick*, 157 F.3d at 720-21.

The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996).

**IV. Discussion**

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. *See* 20 C.F.R. § 404.1520. At step one of the process, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(b). When the claimant is not currently engaged in substantial gainful activity, the ALJ, in step two, must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities; if not, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(c). A severe impairment or combination of impairments exists when there is more than a minimal effect on an individual's ability to do basic work activities. 20 C.F.R. § 404.1521(a); *Smolen*, 80 F.3d at 1290. Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, remembering and carrying out simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

At the third step, the ALJ must compare the claimant's impairment to those in the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits awarded. 20 C.F.R. § 404.1520(d). When the claimant's impairment does not meet or equal

an impairment in the Listing, in the fourth step, the ALJ must determine whether the claimant has sufficient "residual functional capacity" despite the impairment or various limitations to perform her past work; if so, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(e). When the claimant shows an inability to perform past relevant work, a prima facie case of disability is established and, in step five, "the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1520(f).

In this case, at step two of the inquiry, the ALJ found that Plaintiff's depression and post-traumatic stress disorder constituted severe and medically determinable impairments; however, under step three analysis, he found that these impairments did not meet or equal one of the medical impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 23). Therefore, no presumption of disability arose under step three. (Tr. 19). Under step four of the inquiry, the ALJ determined that Plaintiff's medically determinable impairments did not prevent her from performing her past relevant work as an apartment maintenance person, child care worker, telephone survey taker, and janitor/cleaner. (Tr. 26).

Plaintiff raises two main objections to the ALJ's decision. First, she argues that the ALJ improperly rejected the opinion of her treating psychiatrist, Dr. S. Arnold Nelson. Specifically, she alleges that in rejecting Dr. Nelson's opinion, the ALJ mistakenly relied on the absence of treatment records which in fact existed. Second, Plaintiff argues that the ALJ did not fully develop the testimony of the vocational expert and as a result, erred in determining that she could perform her past relevant work.

**A.   ALJ's Rejection of the Opinion of Dr. Nelson**

Plaintiff argues that the ALJ wrongly rejected the opinion of Dr. Nelson, her treating physician, based on the absence of treatment records. Dr. Nelson's opinion, which is dated April 9, 2003, is that due to major depression and PTSD, Plaintiff is totally unable to work and that the disability was then expected to exist for one year or longer. (Tr. 136). In

1 rejecting this opinion, the ALJ specifically noted a "gap in treatment records from October 2 2000 to December 2001," and also stated that the opinion "is not accompanied by any 3 contemporaneous treating notes demonstrating the basis for the opinion . . . ."  (Tr. 19). 4 *Motion for Summary Judgment ("Motion")*, p. 7.  Plaintiff explains that the ALJ "was 5 partially accurate" in that no records were provided at the hearing, but explains that they were 6 later provided to the Appeals Council. *Motion,* p. 7.  Plaintiff characterizes these records as 7 "newly found," and asserts that they provide the contemporaneous support for Dr. Nelson's 8 opinion which the ALJ found to be lacking.  *Id.*, pp. 7-8.

9 In response, the Commissioner argues that the Appeals Council's denial of Plaintiff's 10 request for review was a discretionary administrative action that does not constitute a "final 11 decision" subject to judicial review.  *Defendant's Cross-Motion for Summary Judgment* 12 *("Cross-Motion")*, at p. 3.  Even if subject to review, the Commissioner asserts that Plaintiff 13 failed to establish that this evidence is "new and material" as required by the regulations, and 14 even if it were, it does not contain the objective medical support needed to validate Dr. 15 Nelson's opinion.  *Id.*, p. 4-6.

### 1. The Ruling is Subject to Judicial Review.

17 The threshold question is whether the Appeals Council's ruling is subject to judicial 18 review.  This issue is particularly important here because Plaintiff submitted only to the 19 Appeals Council the evidence upon which she relies to challenge the ALJ's adverse ruling. 20 This is a question that has not been directly addressed by the Ninth Circuit.[1]  The 21 Commissioner contends that under *Califano v. Sanders*, 430 U.S. 99 (1977) and *Matlock v.* 22 *Sullivan*, 908 F.2d 492 (9th Cir. 1990), the District Court does not have jurisdiction to review

---

[1] *Compare* 42 U.S.C. § 405(g) (a "final decision of the Commissioner of Social Security" may be reviewed in the district court) *with Matthews v. Apfel*, 239 F.3d 589, 594 (3rd Cir. 2001) (court has no jurisdiction to review the Appeals Council decision to deny review because it is not a final decision) *and Mackey v. Shalala*, 47 F.3d 951, 953 (9th Cir. 1995) (same).

- 8 -

1 the Appeals Council's denial of Plaintiff's request for review. In *Califano*, the issue the
2 Supreme Court addressed was whether the Administrative Procedures Act or the Social
3 Security Act authorized district courts to exercise subject matter jurisdiction to review a final
4 decision of the Commissioner denying a request to reopen the plaintiff's claims for social
5 security benefits. 430 U.S. at 985-986. *Califano* is not helpful to the Commissioner in this
6 case because it is undisputed that the Plaintiff's appeals were timely and a request to reopen
7 was neither necessary nor appropriate.

8 *Matlock* is equally unhelpful. That case also raised the issue of whether the district
9 court has jurisdiction to review the Appeals Council's discretionary refusal to consider an
10 untimely request for review. 908 F.2d at 493. Again, the petition here was not untimely and
11 thus did not present circumstances appropriate for the discretionary refusal to reopen the
12 case. As stated in the Notice of Appeals Council Action, the Council denied Plaintiff's
13 request for *review* not her request to *reopen*. (Tr. 3). *Califano* and *Matlock* do not address
14 the question of jurisdiction over the Appeals Council's denial of a plaintiff's request for
15 review.

16 Two cases which are helpful to the resolution of jurisdiction in this case are *Ramirez*
17 *v. Shalala*, 8 F.3d 1449 (9th Cir. 1993), and *Bates v. Sullivan*, 894 F.2d 1059 (9th Cir. 1990).
18 Despite the Commissioner's attempts to distinguish *Ramirez*, the case addresses
19 circumstances that mirror those of the instant case. After noting that their opinion constituted
20 a *de novo* review of the district court's judgment, the Ninth Circuit in *Ramirez* indicated that
21 in conducting the review, "we consider the rulings of both the ALJ and the Appeals Council."
22 *Id.* at 1451. This was significant because, as is the case in the instant matter, the plaintiff
23 in *Ramirez* had submitted an additional report to the Appeals Council after the ALJ's decision
24 had been rendered. *Id.* at 1451-52. The court found this review approach appropriate
25 because the Appeals Council, although it "declined to review" the decision of the ALJ,

> reached [its] ruling after considering the case on the merits;
> examining the entire record, including the additional material;
> and concluding that the ALJ's decision was proper and that the

28

> additional material failed to "provide a basis for changing the hearing decision."

*Id.* at 1452.

The circumstances are similar here. The Appeals Council reviewed Plaintiff's additional evidence and cited progress notes contained in the record as a basis for denying review. (Tr. 3). As was the case in *Ramirez*, the Council concluded that the new records and the material cited from the existing record, "does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 4). This Court finds the salient point in *Ramirez* equally applicable here and that review of the entire record, including those records submitted only to the Appeals Council, subject to review. *See also, Bates v. Sullivan*, 894 F.2d 1059 (9th Cir. 1990) (reviewing *de novo* the Appeals Council's refusal to review the decision of the ALJ where the claimant presented new material to the Appeals Council after the hearing before the ALJ), *overruled in part on other grounds by, Bunnell v. Sullivan*, 947 F.2d 341 (1991).

### 2.    The New Evidence is Part of the Administrative Record.

Despite the holding in *Ramirez*, the Commissioner argues that the additional evidence the Plaintiff submitted to the Appeals Council was not "new and material" and should not be considered. This argument conflates the requirements of 42 U.S.C. § 405(g), which addresses the consideration of new evidence by the district court, and 20 C.F.R. §§ 404.970(b)(4) and 416.1470(b)(4), which address the consideration of new evidence by the Appeals Council. While both code section 405(g) and regulations sections 404.970(b)(4) and 416.1470(b)(4) use the term "new and material," the standards for applying these provisions differ. Under section 405(g), a plaintiff must establish good cause and materiality before the evidence will be considered by the district court. *Booz v. Secretary of Health and Human Serv.*, 734 F.2d 1378, 1380 (9th Cir. 1984). However, the good cause and materiality requirements do not apply when, as is the case here, the evidence has been submitted to the Appeals Council and made part of the record. *Compare Harman v. Apfel*, 211 F.3d 1172,

- 10 -

1179-80 (9th Cir. 2000) (stating that where a claimant submitted additional material to the Appeals Council in requesting review of the ALJ's decision, "[w]e may properly consider the additional material because the Appeals Council addressed them in the context of denying Appellant's request for review") *and Ramirez*, 8 F.3d at 1451-52 (Appeals Council declined to review the decision of the ALJ after examining the entire record, including new material and the Ninth Circuit considered both the ALJ's decision and the additional materials submitted to the Appeals Council) *with Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984) ("a remand to the Secretary to consider additional evidence *not contained in the administrative record* . . . [is] provided for by [42 U.S.C. § 405(g)] where the new evidence is material and there is good cause for the failure to incorporate such evidence in the record in a prior proceeding.") (emphasis added).

In contrast to section 405(g), 20 C.F.R. §§ 404.970(b)(4) and 416.1470(b)(4) are much less demanding. Those regulations provide that,

> [i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it related to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in the record.

Thus, these provisions required that the Appeals Council engage in a materiality inquiry, and if it was determined that the new evidence was material and related to the period on or before the date of the ALJ's decision, the Appeals Council could consider the ALJ's opinion in light of the new evidence. Here, by adding the new evidence to the administrative record, the Appeals Council made a *de facto* determination that the new evidence was both material and related to the period on or before the date of the ALJ's decision. As such, the new evidence should not be excluded in evaluating whether the ALJ's rejection of Dr. Nelson's opinion was appropriate.

### 3. In Light of the New Evidence, Remand is Necessary.

In evaluating the opinions of treating physicians, the opinions should be given great deference, but they are "not necessarily conclusive as to either the [claimant's] physical condition or the ultimate issue of disability." *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). While not bound by the opinions of the claimant's treating physicians on the ultimate issue of disability, the ALJ cannot reject the uncontroverted opinion of a claimant's treating physician on the ultimate issue of disability "'without presenting clear and convincing reasons for doing so.'" *Reddick*, 157 F.3d at 725 (quoting *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)). However, when the opinion of another doctor contradicts the treating physician's opinion, "the Secretary can disregard the latter only by setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)) (internal quotations omitted). In making this determination, it is the Court's duty to "review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick*, 157 F.3d at 720; *see also Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). Here, the Magistrate Judge finds that under either standard of review, the ALJ's determination cannot be upheld.

Initially, there is some question whether the ALJ appropriately accorded great weight to Dr. Nelson's opinions. In fact, the ALJ noted that, in reaching his conclusion, "substantial weight is being given to the opinions of the *State Agency physicians* as supported by and consistent with the evidence of the entire record." (Tr. 22) (emphasis added). Without the benefit of the new evidence, this approach was understandable. *See, e.g., Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("[W]hen it is an *examining* physician's opinion that the ALJ has rejected in reliance on the testimony of a nonexamining advisor, reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.")

1  However, when the new evidence is considered, the ALJ's interpretation of the evidence is
2  of questionable reliability.
3  Dr. Nelson, who is identified as Plaintiff's current physician at CODAC, diagnosed
4  her as suffering from major depression and PTSD as a result of childhood sexual abuse. (Tr.
5  135-136). The doctor concluded that Plaintiff was totally unable to work due to ongoing
6  anxiety, depression, fears, depression and nightmares, and he expected her disability to last
7  one year or longer. (Tr. 136). In rejecting this opinion, the ALJ noted "a gap in treatment
8  records from October 2000 to December 2001." (Tr. 19). The additional evidence
9  submitted by the Plaintiff to the Appeals Counsel consists of nine pages of progress notes
10 signed by Marla Perry, Ph.D./NP that document Plaintiff's treatment at CODAC Behavioral
11 Health Services, Inc., between November 9, 2000 and December 10, 2001. (Tr. 256-65).
12 As such, the new evidence remedies the noted "gap in treatment records . . . ."
13 Moreover, the new records contain information that the ALJ might find sufficient to
14 support a finding that Plaintiff is disabled. Reported in the records are panic attacks, anxiety,
15 irritability, sleep problems, decreased concentration, and decreased memory. (*Id.*) When
16 rejecting the opinion of a treating physician, an ALJ can satisfy the burden of providing
17 specific and legitimate reasons "by setting out a detailed and thorough summary of the facts
18 and conflicting clinical evidence, stating his interpretation thereof, and making findings."
19 *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989) (quoting *Cotton v. Bowen,* 799 F.2d
20 1403, 1408 (9th Cir.1986) (internal quotation marks omitted)). Here, because the ALJ did
21 not have the opportunity to review, summarize and interpret the new evidence (the CODAC
22 records), he was unable to set-out the requisite reasons for rejecting Dr. Nelson's opinion.
23 If the gap in treatment notes was the sole basis for the rejection of Dr. Nelson's
24 opinions, the Court would be inclined to recommend that benefits be awarded. However, the
25 ALJ also stated that Dr. Nelson's opinion "is not accompanied by any contemporaneous
26 treating notes demonstrating the basis for the opinion or explaining the difference from the
27 GAF of record versus this statement." (Tr. 19). A review of the available CODAC treatment
28

1  records, including the new evidence, establishes that Plaintiff was seen regularly at CODAC.
2  In stating his opinion, which is dated April 9, 2003, Dr. Nelson reported that Plaintiff was
3  first seen at CODAC on October 10, 2000. (Tr. 136). She was thereafter seen a number of
4  times. (Tr. 175-180 (October 10, 2000); Tr. 263 (November 9, 2000); Tr. 261 December 7,
5  2000; Tr. 262 (January 8, 2001); Tr. 260 (June 28, 2001); Tr. 259 (October 3, 2001); (Tr.
6  257 (December 10, 2001); Tr. 204 (January 15, 2002); Tr. 181-182 (February 4, 2002); Tr.
7  203 (March 11, 2002); Tr. 216 (Medication Record reflecting 18 appointments from October
8  10, 2000 through March 5, 2002); Tr. 136 (April 9, 2003). These records, however, leave
9  an unexplained gap in treatment from March 2002 through April of 2003. As such, the ALJ's
10 indication that no treatment notes contemporaneous to Dr. Nelson's opinion exist, may be a
11 justified conclusion even when the new evidence is considered. However, as Plaintiff was
12 not questioned about this gap in treatment, the ALJ on remand should also explore whether
13 Plaintiff sought treatment during this period.

### B.     ALJ's Treatment of Vocational Evidence

15  Plaintiff argues that the ALJ did not fully develop the testimony of the vocational
16 expert and as a result, erred in determining that she could perform her past relevant work.
17 This is clearly the case. In his hypothetical, the ALJ described the Plaintiff as moderately
18 limited in the ability to maintain attention and concentration for extended periods, to perform
19 activities within a schedule, to maintain regular attendance, to be punctual within customary
20 tolerances, and in the ability to complete a normal workday and work week without
21 interruptions from psychologically-based symptoms. (Tr. 292-93). In response, the VE
22 stated that the described individual was capable of performing the past relevant work
23 performed by the Plaintiff. (Tr. 293). In reaching her opinion, however, the VE stated,
24 "[a]nd since "moderate" in my understanding is only on an average, [an] individual with
25 those sort of limitations [could] work in all those different types of areas." (Tr. 293-94). As
26 the Plaintiff argues, the VE was incorrect in her understanding of the definition of
27 "moderate."

The ALJ, in forming his hypothetical, apparently adopted the conclusions of Paul Tangeman, Ph.D., who completed a Functional Capacity Assessment of Plaintiff. In the Assessment, Dr. Tangeman was presented various categories of functional ability and, for each category, rated the Plaintiff as "Not Significantly Limited," "Moderately Limited," or "Markedly Limited." (Tr. 155). A review of the Assessment itself discloses no definitions for the offered ratings. The Social Security regulations also do not define "moderate." Some light is shed on the definition by Listing 12.00 of the Social Security Regulations, which defines "markedly limited" as follows:

> Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, so long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. § 404, subpt. P, app. 1, listing 12.00C. Additionally, the Third Circuit has stated that "moderately limited," "means that the claimant has some loss of ability in the activity listed for up to one-third of the time." *Morales v. Apfel,* 225 F.3d 310, 314 n. 4 (3rd Cir. 2000).

While these definitions do not provide entirely clear or consistent definitions for the term "moderately limited," they do make clear that the term does not equate to "average" as the VE believed. Common sense suggests that the average worker is not moderately limited in the ability to concentrate, maintain regular attendance, or complete a normal workday or workweek without interruptions. (*See* Tr. 155-156 (describing Plaintiff's limitations). As such, the Court recommends that this matter be remanded to the ALJ for clarification and reconsideration of the Plaintiff's vocational abilities in light of her stated limitations.

**V.      RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE**

Based on the foregoing and pursuant to 28 U.S.C. § 636(b) and Local Rule 1.17(d)(2), Rules of Practice of the United States District Court, District of Arizona, the Magistrate Judge recommends that the District Court, after an independent review of the record, **GRANT** Plaintiff's Motion for Summary Judgment [Doc. No. 8] and **DENY** Defendant's

Cross-Motion for Summary Judgment [Doc. No. 9], and **REMAND** this action for reconsideration by the ALJ consistent with this Report and Recommendation.

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 04-244-TUC-RCC**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 3rd day of January, 2006.

_Jacqueline Marshall_
Jacqueline Marshall
United States Magistrate Judge

- 16 -